CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 24, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:26-cr-00006 |
| Cristian Eliu Medrano-Umanzor, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Cristian Eliu Medrano-Umanzor's Motion to Revoke Detention Order. (Dkt. 35.) Pursuant to 18 U.S.C. § 3145(b), Medrano-Umanzor asks this court to revoke United States Magistrate Judge Joel. C. Hoppe's order of detention entered on February 12, 2026. (Dkt. 25.) After a *de novo* review of the record and the parties' arguments, the court concludes that there are no conditions of release that will reasonably assure Medrano's appearance in future court proceedings. Accordingly, the court will deny Defendant's motion.

### I. Background

#### A. Procedural History

On February 5, 2026, the government filed a criminal complaint against Defendant Cristian Eliu Medrano-Umanzor ("Medrano"). (Dkt. 1.) Based on that complaint, the Magistrate Judge issued an arrest warrant. (Dkt. 9.) Medrano was arrested the next day. (Dkt. 8.) At the initial appearance on February 6, the government orally moved for detention, and the Magistrate Judge determined that a detention hearing was proper. (Dkts. 16, 17.) The

Magistrate Judge then granted Medrano's oral motion for a continuance of the detention hearing and preliminary examination hearing.  (Dkts. 15, 17.)  Medrano was remanded to custody pending the hearing.  (Dkts. 10, 18.)

On February 12, 2026, Medrano appeared before the Magistrate Judge for the detention hearing and preliminary hearing.  (Dkts. 21, 22.)  First, following testimony and the parties' arguments, the Magistrate Judge found that there was probable cause to believe Medrano committed the alleged 8 U.S.C. § 1326 offense.  (Dkt. 23; Hr'g Tr. 26:6–7 (Dkt. 35-1).)  Then, the parties presented arguments and testimony as to the issue of detention pending trial.    (Hr'g Tr. 26:11–44:22.)    The Magistrate Judge concluded that the "risk of nonappearance" justified a detention order.  (*Id.* 47:18–20.)  In reaching this conclusion, he considered the § 3142(g) detention factors—including Medrano's community and family ties, criminal history, past conduct, the nature of the offense, and the weight of evidence against him—and found by a preponderance of the evidence that there were no conditions or combination of conditions that would reasonably assure Medrano's presence in court as required.  (*Id.* 44:25–47:20.)

Several weeks later, on February 25, 2026, Medrano was indicted for illegal reentry in violation of 8 U.S.C. § 1326(a), (b)(1).  (Dkt. 29.)  On March 10, Medrano moved to revoke the detention order pursuant to 18 U.S.C. § 3145(b).[1]  (Dkt. 35.)  In accordance with the

---

[1] Medrano's motion to revoke the detention order does not challenge whether a detention hearing was justified in this case pursuant to 18 U.S.C. § 3142(f)(2).  Accordingly, the court will not address whether the Magistrate Judge's February 12 detention hearing was warranted.

court's order to respond and order granting a brief extension, (Dkts. 36, 38), the government responded less than a week later, (Dkt. 39).

### B. Factual History

Medrano was born in El Salvador and was brought to the United States as a young child.  (Def.'s Mot. at 1–2 (Dkt. 35); Gov't Opp. at 2 (Dkt. 39).)  He resided in the United States for most of his childhood; he attended elementary, middle, and high school in Strasburg, Virginia.  (Def.'s Mot. at 2.)  His parents have been legal residents for 24 years and are currently business owners in Virginia.  (*Id.*; Hr'g Tr. 39:4–7.)  Medrano applied for Temporary Protected Status ("TPS") in 2005 and was approved through December of 2015.  (Def.'s Mot. at 2; Gov't Opp. at 2.)  However, when Medrano applied for TPS in 2015, his status was denied.[2]  (Def.'s Mot. at 2; Gov't Opp. at 2.)

In April of 2018, an immigration judge ordered Defendant's removal from the United States, and he was deported to El Salvador the following month.  (Hr'g Tr. 7:4–10; Def.'s Mot. at 3.)  Medrano attempted to reenter the United States in September of 2019, but he was arrested by Border Patrol in Rio Grande City, Texas.  (Schwab Aff. ¶ 19 (Dkt. 1-1); Def.'s Mot. at 3.)  He was convicted of the felony of unlawful reentry, 8 U.S.C. § 1326, on March 10, 2020, (Schwab Aff. ¶ 13), and sentenced to 15 months in prison, (Hr'g Tr. 7:18–24).  He was removed to El Salvador in October of 2020 following his sentence.  (*Id.* 6:18–19.)

---

[2] Neither party explains precisely why Medrano's Temporary Protected Status was denied in 2015.  Defense counsel emphasizes that "Medrano never learned the reasons why his applications were denied," but that "it appears likely that the denials were related to his juvenile arrest record."  (Def.'s Mot. at 2; Hr'g Tr. at 39:8–10.)  The government's brief and the DHS agent's affidavit in support of the criminal complaint both state that Medrano's 2015 application "was revoked," without explanation as to why.  (Dkt. 1-1 ¶ 16 n.1; Gov't Opp. at 2 (Dkt. 39).)

Medrano was detained for the instant offense in Strasburg, Virginia on January 24, 2026.  (Schwab Aff. ¶ 6.)  Police officers located Medrano in a car parked outside of a hotel and determined that he had an active ICE detainer.  (*Id.*; Def.'s Mot. at 4.)  An ICE Enforcement and Removal Operations Duty Agent responded to the police officer's call and placed Medrano under arrest.  (Schwab Aff. ¶ 7.)

## II.    Standard of Review

When a magistrate judge orders the pretrial detention of a criminal defendant, the defendant may move for revocation of the order.  *See* 18 U.S.C. § 3145(b).  The district court conducts a *de novo* review of the magistrate judge's detention order.  *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).  The court "must make an independent determination of the proper pretrial detention or conditions of release."  *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

Pursuant to the Bail Reform Act of 1984, a court shall order an individual charged with a federal offense detained pending trial if it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  To justify pretrial detention, the government has the burden of establishing that either: (1) "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005); *or* (2) "no combination of conditions will reasonably assure the defendant's presence at future court proceedings," *Stewart*, 19 F. App'x at 48.  The government only needs to prove one of these two prongs, not both.  *See id.*

- 4 -

If neither prong is met, the court must release the defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

### III.    Analysis

In this case, the government only sought pretrial detention based on flight risk—specifically, on the grounds that there is no set of conditions that will reasonably assure Medrano's future appearance.[3] (*See* Hr'g Tr. 30:15–18; Gov't Opp. at 1.) The rebuttable presumption under § 3142(e) does not apply, as this case does not involve any offenses or circumstances that would trigger a presumption. *See* 18 U.S.C. § 3142(e)(3). Therefore, in Medrano's case, "[t]he government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *Stewart*, 19 F. App'x at 48. The court determines whether this burden is met by conducting an individualized assessment of the four factors delineated in § 3142(g).

After weighing the factors set forth in 18 U.S.C. § 3142(g) and conducting a *de novo* review of the record, the court concludes that the government has met its burden of showing, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the Defendant's appearance at trial.

1.  <u>Nature and Circumstances of Offense Charged</u>

---

[3] The government does not move for detention on the basis of assuring public safety, nor do they proffer arguments or evidence as to this factor. (*See* Hr'g Tr. 30:15–18; Gov't Opp. at 1.) Therefore, the court does not evaluate whether "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e).

First, the "nature and circumstances of the offense charged" weigh in favor of pretrial detention. 18 U.S.C. § 3142(g)(1). Because Medrano has previously been convicted of the felonies of illegal reentry and drug distribution, (Hr'g Tr. 7:18–24, 9:4–11), he faces up to ten years in prison if he is convicted of the illegal reentry charge. *See* 8 U.S.C. § 1326(b)(1). This court has previously found that "[t]he possibility of a lengthy prison term and deportation creates an incentive to flee" in a case where the defendant faced the same § 1326(a) and (b) charge and the same ten-year maximum sentence as Medrano. *United States v. Vargas-Garcia*, No. 3:25-cr-00005, 2025 WL 1117459, at *2 (W.D. Va. Apr. 15, 2025); *see United States v. Reymundo*, 792 F. Supp. 3d 612, 627–29 (D. Md. 2025) (finding that the "nature and circumstances of the offense" support detention pending trial where the defendant was indicted for a § 1326 offense).

Medrano has previously been removed from the United States on two separate occasions—in May of 2018 and in October of 2020. (Hr'g Tr. 7:2–8:4.) After his 2020 removal, Medrano traveled from El Salvador back to Virginia sometime in or before 2022, as indicated by his 2022 misdemeanor arrest for public intoxication. (*Id.* 10:22–25.) According to Agent Schwab's testimony at the detention hearing, DHS "has been looking for Mr. Medrano since 2023 when [the agency] became aware that he was back in the country," and that Agent Schwab first "picked up the case" in November of 2025. (*Id.* 4:14–16.) Agent Schwab "conducted surveillance on a few suspected addresses," but could not locate Medrano. (*Id.* 4:21–24.) Medrano was eventually found in Shenandoah County, Virginia in January of 2026. (*Id.* 4:25–5:6.) Thus, the nature and circumstances of this offense involve Medrano's

- 6 -

capacity to travel long distances and avoid detection by law enforcement, even after his previous illegal reentry conviction in 2020.

2. Weight of Evidence Against Medrano

Next, the court looks to the "weight of the evidence against the person," 18 U.S.C. § 3142(g)(2), which also supports of an order of pretrial detention in this case. Here, the weight of the evidence against the Defendant appears to be quite strong given the DHS agent's unrebutted testimony that the Defendant is not a citizen and was removed from the United States to El Salvador in October of 2020. (Hr'g Tr. 6:20–7:1; 7:13–8:3.) The agent also testified that there was no indication in the Citizenship and Immigration Services records system of any "consent for Mr. Medrano to reapply for admission" or that "Mr. Medrano applied to obtain the consent" of the United States to reapply. (*Id.* 8:5–14.) Medrano has not contested or rebutted this testimony.

3. History and Characteristics

Third, Medrano's "history and characteristics" weigh both in favor of and against pretrial detention. 18 U.S.C. § 3142(g)(3). For this factor, the Bail Reform Act instructs the court to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *Id.* § 3142(g)(3)(A).

First, Medrano's history and characteristics support his argument for release. Medrano has very strong family and community ties in Virginia, as he spent most of his childhood and

- 7 -

early adulthood in the United States.  (Hr'g Tr. 34:20–35:11.)  His parents and two siblings are all legal residents in Virginia, and his parents are business owners who have remained in their Virginia community for 24 years.  (*See id.* 39:4–10.)  Conversely, the only identified family member currently living in El Salvador is his grandmother.  (*Id.* 40:4–6.)

However, Medrano's criminal history and history of substance abuse weigh against pretrial release.  Although many of Medrano's past charges were from when he was a juvenile, his adult criminal record nevertheless exhibits some "disrespect for the legal system." *Vargas-Garcia*, 2025 WL 1117459, at *3.  Specifically, as an adult, he has been charged with (1) public intoxication in 2010, (2) purchasing and possessing alcohol at age 19 in 2011, (3) possession of marijuana in 2012, (4) purchasing and possessing alcohol at age 20 in 2013, (5) resisting arrest and public intoxication in 2016, (6) obstruction of justice and public intoxication in 2016 (but only convicted of public intoxication), (7) manufacturing a controlled substance in 2017, (8) alien present without permission in 2018, (9) illegal reentry after prior removal in 2019, (10) public intoxication in 2022, and (11) public intoxication in 2023.  (Dkt. 5 at 3–5.)  While Medrano has also been charged with failure to appear on two occasions, failure to comply with alcohol safety program, possession with intent to distribute marijuana, and assault on a police officer, and has received one capias order (i.e., failure to appear or comply), each of these charges were ultimately dismissed for unspecified reasons.  (*Id.*)  His criminal record also

demonstrates a history of drug and alcohol abuse. Finally, the record does not show whether Medrano is currently employed.[4]

Additionally, the court agrees with the Defendant that Medrano's ICE detainer is not a dispositive factor in this analysis. (Def.'s Mot. at 9–10; Hr'g Tr. at 38:12–15.) Many courts have held that "a risk of deportation" in cases involving ICE detainers "does not establish a serious risk of flight" for purposes of determining pretrial detention. *United States v. Nunez*, No. 4:25-cr-00007, 2025 WL 875803, at *2 (E.D. Va. Mar. 20, 2025). Nor does it allow the court to "substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act." *United States v. Santos-Flores*, 794 F.3d 1088, 1091–92 (9th Cir. 2015); *see United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017); *United States v. Stepanyan*, No. 3:15-cr-00234, 2015 WL 4498572, at *4 (N.D. Cal. July 23, 2015) (holding that "immigration consequences are relevant to a defendant's 'risk of flight' in the bail determination" and "a defendant could, of his own volition, abscond to escape the consequences of prosecution, perhaps made more onerous by the risk of deportation"). Some courts have refused to even consider the ICE detainer as relevant to the § 3142(g) analysis. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("A defendant's immigration detainer is not a factor in [the § 3142(g)] analysis, whether as evidence for or against a finding that the defendant poses a risk of nonappearance.").

---

[4] Medrano's pretrial bail report in this case cites his 2020 presentence report for the proposition that Medrano has held several jobs, including a position in his family's business. (Dkt. 5 at 2.) However, it is unclear whether Medrano has been employed since 2020.

Even if the court does not consider the ICE detainer in its § 3142(g) analysis, the court may nevertheless assess whether the defendant poses a *voluntary* flight risk, or the risk of nonappearance that involves "an element of volition." *Santos-Flores*, 794 F.3d at 1091; *see Stepanyan*, 2015 WL 4498572, at *4. Here, Medrano has shown at least some voluntary flight risk and willingness to evade judicial oversight due to his prior voluntary unlawful entry into the United States. Further, although the charges were ultimately dismissed for reasons not presented to the court, Medrano has been charged twice with failure to appear. (Hr'g Tr. 27:14–28:2.) This court declines to find that the ICE detainer "adds a layer of protection in terms of the risk of flight," as Defendant argues. (Def.'s Mot. at 10.) Because ICE operates under an entirely different statutory and regulatory scheme, this court "cannot rely upon ICE custody to find that his appearance for future proceedings in this criminal case would be reasonably assured." *Reymundo*, 792 F. Supp. 3d at 628–29.

4. <u>Danger to the Community</u>

The final enumerated § 3142(g) factor looks to "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Because the government does not argue under—and the court does not assess—the reasonable assurance of safety issue in 18 U.S.C. § 3142(e)(1), this factor does not provide any support for an order of detention pending trial in Medrano's case.

Medrano's motion also asks this court to address DHS's accusations that Medrano is an MS-13 gang member. Medrano repudiates such accusations as unfounded and emphasizes their injurious effects on both him and his family. (*See* Def.'s Mot at 10–12.) The court assures

Medrano that any DHS accusations of MS-13 gang involvement do not factor into the court's decision on his motion to revoke the detention order.  There is simply no factual support in the record for these allegations, besides vague statements that Medrano was "labeled while he was in the Farmville Detention Center," (Hr'g Tr. 28:19–21), and that Agent Schwab saw some unidentified document from "when [Medrano] was in immigration custody" but does not know whether Medrano is an MS-13 member, (*id.* 16:21–17:4).  Neither the testifying witnesses at the detention hearing nor the Assistant U.S. Attorney have provided any evidence of gang involvement.

* * *

Overall, based on the factors set forth in 18 U.S.C. § 3142(g) and a careful review of the record, the court concludes that the government has met its burden of showing, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the Defendant's appearance at trial.  Medrano's significant ties to the Virginia community and long history of residing here do not outweigh the substantial risk of flight stemming from Medrano's prior illegal reentry and two deportations, his criminal and substance abuse history, the weight of the evidence against him in this case, and the threat of being involuntarily removed.  *See Nunez*, 2025 WL 875803, at *3 (finding that defendant's community "ties are strong, but not strong enough to overcome that Defendant is a flight risk because of the threat of being involuntarily removed").

## IV.    Conclusion

For the foregoing reasons, the court finds that the government has shown it is more likely than not that no condition or combination of conditions will reasonably assure the Defendant's appearance at trial.   Accordingly, Defendant's Motion to Revoke Detention Order, (Dkt. 35), will be denied.

An appropriate Order will issue.

**ENTERED** this  24th  day of March, 2026.


_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE